UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**NATIONWIDE GENERAL INSURANCE COMPANY,** *et al.***,**
    Plaintiff,

v.

**TAMMY S. HOPE,**
    Defendant

**CECIL KEITH CHAPMAN**,
    Intervenor.

Case No. 4:21-cv-930-CLM

## MEMORANDUM OPINION

David Hope ran a firearms business out of his garage. Cecil Keith Chapman went to Hope's house to pick up a firearm that Hope received from a third party for Chapman. When Chapman arrived at Hope's house, Hope's dog bit him and caused injuries.

Chapman sued Hope in state court for negligence and wantonness. Nationwide, who insures the Hopes, then filed this declaratory judgment action seeking a ruling that it does not owe the Hopes a defense or indemnity in the state court action because the claims asserted against the Hopes are barred by the business exclusion in the insurance policies.

After engaging in discovery, Nationwide filed this motion for summary judgment. Tammy Hope[1] failed to respond to the motion, so the court granted Chapman's motion to intervene (doc. 37) and allowed him to respond to the motion for summary judgment. (Doc. 46). In its reply to

---

[1] David Hope passed away in March 2022. This court granted Nationwide's motion to substitute Tammy Hope as a party in the action in July 2022. (Doc. 31).

Chapman's response, Nationwide moved to strike a portion of Tammy Hope's testimony, arguing it is impermissible hearsay. (Doc. 47).

For the reasons stated below, the court **GRANTS** Nationwide's motion for summary judgment (doc. 34) and **DENIES AS MOOT** Nationwide's motion to strike (doc. 47).

## BACKGROUND

David Hope manufactured and brokered firearms out of his home garage. As part of that business, Hope maintained a Federal Firearms License that allowed him to sell firearms and legally transfer firearms bought by others from third parties. He typically charged $20 for the brokerage services, but often did not charge acquaintances or regular customers. In 2019, Hope made $67,580 in gross income from his business. (Doc. 35-2, p. 2).

Cecil Keith Chapman was friends with David Hope and had purchased silencers for multiple firearms from Hope. Chapman also used Hope's brokerage services for the transfer of several firearms. This case starts with Chapman using Hope's brokerage service.

Chapman bought a firearm from an out of state dealer and had it shipped to Hope. But because Chapman was either a social acquaintance or regular customer (or both), Hope did not charge Chapman the usual fee. When Chapman went to pick up the firearm from Hope, the Hope's dog bit him. The bite injured Chapman.

Chapman then sued David Hope in state court, asserting negligence and wantonness claims. Tammy Hope was later substituted as a party in the state court action because of David Hope's death in March 2022.

The Hopes had three policies through Nationwide: one for their primary residence, one for another residence, and a personal umbrella policy that provided excess personal liability coverage. Under each of those policies, coverage for personal liability and medical payments is excluded for bodily injury arising out of or in connection with a business

conducted at the insured location. The Hopes did not have additional insurance for the firearms business Mr. Hope ran on the property.

Nationwide filed this action seeking a declaration that it has no duty to defend or indemnify the Hopes in the state court action under any of the three policies because the dog bite arose out of, or was connected to, the business Mr. Hope ran on the Hopes' property.

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Nationwide argues that it does not owe coverage to the Hopes for the dog bite incident because coverage is barred by the business exclusion contained in all three policies. Chapman argues that the business exclusion does not apply because he did not pay Hope for brokering the firearm that he was pickup up, so Hope was not conducting business. He was simply doing a friend a favor. So Chapman asks this court to deny Nationwide's motion for summary judgment.

1. <u>Policy Language</u>:

All three policies contain the following relevant provisions:

**DEFINITIONS**

. . .

5. "Business" means:

    a. A trade, profession or occupation, including self-employment, engaged in on a full-time, part-time or occasional basis; or

    b. Any other activity engaged in for money or other compensation, except the following:

        (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total gross compensation for the 12 months before the beginning of the policy period;

        (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

        (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

        (4) The rendering of home day care services to a relative of an "insured".

## SECTION II – EXCLUSIONS

E. COVERAGE E – Personal Liability And Coverage F – Medical Payments To Others

Coverages E and F do not apply to the following:

. . .

3. "Business"

    a. =="Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location"==

or engaged in by an "insured", whether or not the "business is owned or operated by an "insured" or employs an "insured".

This Exclusion E.3. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

(Docs. 35-6, p.42; 35-7, p. 40; 35-8, p. 21) (highlight added).

2. Applicable law:

The question is whether Chapman's visit to the Hope house arose out of, or was connected with, David Hope's firearm business even though Chapman was not paying Hope money to broker the firearms deal.

In the insurance context, "[c]ourts have consistently held that but-for causation is enough to constitute 'arising out of.'" *Twin City Fire Ins. Co., Inc. v. Ohio Cas. Ins. Co., Inc.*, 480 F.3d 1254, 1264 (11th Cir. 2007). Indeed, the "[a]rising out of" language is "about as general and broad as it could be written." *State Farm Fire & Cas. Co. v. Erwin*, 393 So. 2d 996 (Ala. 1981). In the context of the use of a motor vehicle, "'[a]rising out of' are words of much broader significance than 'caused by'. They are ordinarily understood to mean "originating from' 'having its origin in,' 'growing out of' or 'flowing from", or in short, 'incident to, or having connection with', the use of the car." *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co. of Wisconsin*, 189 F.2d 374, 378 (5th Cir. 1951).

3. The Parties' Arguments:

According to Nationwide, the dog bite had to arise out of Hope's business because 'but for' the business, Chapman would not have been at Hope's house when the dog bit him. Even though Chapman didn't pay for the service this time, Nationwide points to evidence that Hope often waived the brokerage fee for acquaintances and regular customers. And Chapman had purchased silencers from Hope and used Hope's brokerage

services, so Nationwide argues Hope could have been anticipating future business with Chapman by waiving the fee. Plus, regardless of Chapman not paying Hope for the transfer, Hope still provided a service associated with his business as a firearms manufacturer and broker that led to the incident. Thus, Nationwide says the injuries arose out of and were connected to Hope's business.

Chapman disagrees. He claims there is no evidence Hope's transfer of the firearm was causally related to any prior purchase Chapman made or to any potential future business transaction. Instead, Chapman points to his testimony and to the Hope's testimony to establish that the transfer of the firearm arose out of the social relationship between the two, not Mr. Hope's business.

Mr. Hope testified that Chapman was an occasional customer who only bought silencers one time and "may have done some gun transfers through [an online firearm's dealer] a time or two before." (Doc. 35-1, pp. 32–35). He said that Chapman was there for a personal purpose—"to pick up the firearm he had ordered because I didn't sell it to him." (Doc. 35, p. 37). And he said that he knew Chapman for "quite a few years" and that Chapman would call him "relatively often just to shoot the bull." (Doc. 35, pp. 38–39).

And Mrs. Hope testified that while Chapman was both a customer and friend to Mr. Hope, Mr. Hope didn't charge him because he "didn't charge friends that would have guns sent there." (Doc. 35-9, p. 17). She added that she knew Mr. Hope didn't charge Chapman "because he was friends, he usually doesn't, or repeat customers." (Doc. 35-9, p. 19).

Chapman also testified in the state court suit that Mr. Hope had received guns for him before, that they were friends and had known each other for over ten years, and that the silencers he had purchased were not the reason he went to the Hope's to pick up the firearm. (Doc. 45-2, pp. 25–28). And he testified that he had been to Hope's shop 12-15 times before, and that sometimes he would go there to hang out and shoot guns. (*Id.*)

The parties both claim *Esurance Ins. Co. v. Grissett* supports their position. 2013 WL 4079377 (N.D. Ala. Aug. 13, 2013). There, a father performed repair work on his daughter's car, drove it to a separate location to have it painted, and was in an accident while driving it back to his shop. The father planned to charge his daughter for the repairs but decided not to after the accident. The court held that even though no money changed hands for the repairs, no reasonable jury could conclude that the "engaged in business" exclusion in the insurance policy did not apply. Thus, the insurer had no duty to defend or indemnify the defendant under the insurance policy.

In Nationwide's view, *Grissett* suggests that a business exclusion in an insurance policy will apply even when no money changes hands. Nationwide argues that the *Grissett* court rejected the daughter's argument that the exclusion did not apply because the repair was ultimately gratuitous. Thus, Nationwide argues that even though no money changed hands here and Hope and Chapman had a social relationship, *Grissett* establishes that the business exclusion still applies.

Chapman, on the other hand, argues that the business exclusion applied in *Grissett* only because the father originally planned to charge the daughter for the repairs and later decided not to do so after the accident. But Chapman says this case is different because Hope never planned to charge him for the firearm transfer.

4. <u>Analysis</u>:

Chapman's presence at the Hope's house arose out of, and was connected to, David Hope's firearms business. Chapman would not have been at Hope's house but for his need to pick up a gun that David Hope helped broker—a business service that Hope provided and paid taxes on. True, Chapman did not pay Hope for *this* brokerage service, but Chapman had paid Hope before, and Hope often waived the small brokerage fee for repeat customers. This is typical, good business practice. And because the incident was connected to Hope's business, it is excluded from coverage.

## CONCLUSION

For these reasons, the court **GRANTS** Nationwide's motion for summary judgment, and **DENIES AS MOOT** Nationwide's motion to strike. (Doc. 34). The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** on June 12, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE